# Exhibit 1

[Federal Register: March 28, 2005 (Volume 70, Number 58)]
[Notices]
[Page 15624-15625]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr28mr05-42]

-----------------------------------------------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION


Sunshine Act; Meetings

Date and Time: Thursday, March 24, 2005, 1 p.m. Eastern Time.

Place: Clarence M. Mitchell, Jr. Conference Room on the Ninth Floor of
the EEOC Office Building, 1801 ``L'' Street, NW., Washington, DC 20507.

Status: The meeting will be open to the public.

Matters to be Considered:
Open Season
1. Announcement of Notation Votes, and
2. Spring 2005 Regulatory Agenda

    Note: In accordance with the Sunshine Act, this meeting will be
open to public observation of the Commission's deliberations and
voting. (In addition to publishing notices on EEOC Commission
meetings in the Federal Register, the Commission also provides a
recorded announcement a full week in advance on future Commission
sessions.)


    Please telephone (202) 663-7100 (voice) and (202) 663-4074 (TTY) at
any time for information on these meetings.

[[Page 15625]]

Contact Person for More Information: Stephen Llewellyn, Acting
Executive Officer on (202) 663-4070.

    Dated: March 23, 2005.
Stephen Llewellyn,
Acting Executive Officer, Executive Secretariat.
[FR Doc. 05-6093 Filed 3-23-05; 4:12 pm]
BILLING CODE 6750-06-M


05 1035

FILED

MAY 2 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# Exhibit 2

```
[Federal Register: March 28, 2005 (Volume 70, Number 58)]
[Notices]
[Page 15624-15625]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr28mr05-42]

=======================================================================
-----------------------------------------------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION


Sunshine Act; Meetings

Date and Time: Thursday, March 24, 2005, 1 p.m. Eastern Time.

Place: Clarence M. Mitchell, Jr. Conference Room on the Ninth Floor of
the EEOC Office Building, 1801 ``L'' Street, NW., Washington, DC 20507.

Status: The meeting will be open to the public.

Matters to be Considered:
Open Season
1. Announcement of Notation Votes, and
2. Spring 2005 Regulatory Agenda

    Note: In accordance with the Sunshine Act, this meeting will be
open to public observation of the Commission's deliberations and
voting. (In addition to publishing notices on EEOC Commission
meetings in the Federal Register, the Commission also provides a
recorded announcement a full week in advance on future Commission
sessions.)


    Please telephone (202) 663-7100 (voice) and (202) 663-4074 (TTY) at
any time for information on these meetings.

[[Page 15625]]

Contact Person for More Information: Stephen Llewellyn, Acting
Executive Officer on (202) 663-4070.

    Dated: March 23, 2005.
Stephen Llewellyn,
Acting Executive Officer, Executive Secretariat.
[FR Doc. 05-6093 Filed 3-23-05; 4:12 pm]
BILLING CODE 6750-06-M
```

05 1035

**FILED**

MAY 2 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# Exhibit 3

*The U.S. Equal Employment Opportunity Commission*

# Meeting of March 24 to Vote on Spring Regulatory Agenda

Meeting convened at 1:00 pm

## Transcript

PRESENT:

CARI M. DOMINGUEZ Chair
NAOMI C. EARP Vice Chair
LESLIE E. SILVERMAN Commissioner
STUART J. ISHIMARU Commissioner

ALSO PRESENT:

BERNADETTE B. WILSON,
Program Analyst

PEGGY MASTROIANNI,
Associate Legal Counsel

CAROL MIASKOFF,
Assistant Legal Counsel

This transcript produced from audio provided by the U.S. Equal Employment Opportunity Commission.

## INDEX

## AGENDA ITEM

I. Announcement of Notation Votes
II. Motion to Close a Portion of the Next Commission Meeting
III. FY 2005 Spring Regulatory Agenda
IV. Motion to Adjourn

## PROCEEDINGS

CHAIR DOMINGUEZ: All right. The meeting will now come to order.

Good afternoon and welcome to the Equal Employment Opportunity Commission.

The purpose of today's meeting is to discuss and vote on one item, the EEOC's Spring 2005 Regulatory Agenda.

In accordance with the Sunshine Act, this meeting is open to public observation of the Commission's deliberation and voting.

At this time, I'm going to ask Bernadette Wilson to announce any notation votes that have taken place since the last Commission meeting. Ms. Wilson?

05 1035

FILED
MAY 2 0 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MS. WILSON: Good afternoon, Madam Chair, Madam Vice Chair, Commissioners. I'm Bernadette Wilson from the Executive Secretariat.

During the period February 18th, 2005 through March 23rd, 2005, the Commission acted on two items by notation vote. Approved litigation on one case, and approved scheduling a Commission meeting with less than one week's notice to consider the Spring 2005 Regulatory Agenda.

Madam Chair, it is appropriate at this time to have a motion to close a portion of the next Commission meeting in case there are any closed meeting agenda items.

CHAIR DOMINGUEZ: Thank you, Ms. Wilson. Do I have a motion?

VICE CHAIR EARP: So moved.

CHAIR DOMINGUEZ: Second?

COMMISSIONER SILVERMAN: Second.

CHAIR DOMINGUEZ: Is there any discussion?

(No response.)

CHAIR DOMINGUEZ: All in favor, please say aye.

(Chorus of ayes.)

CHAIR DOMINGUEZ: Opposed?

(No response.)

CHAIR DOMINGUEZ: The ayes have it and the motion is carried.

The issue for discussion is the EEOC's Spring 2005 Regulatory Agenda. The item will be presented by Ms. Carol Miaskoff, Assistant Legal Counsel. Before the presentation, however, I'd like to say a word of explanation regarding one of the notation vote items that was just announced by Ms. Wilson, because it concerned the scheduling of our meeting today. As Ms. Wilson reported, the Commission voted by notation vote to hold this particular meeting to consider the Regulatory Agenda with less than one week's notice.

This is a procedure that we followed under the Sunshine Act in order to meet our deadlines and obligations with respect to the Regulatory Agenda. The proposed Spring 2005 Regulatory Agenda had gone before the Commissioners for consideration by notation vote on March 14th with a due date of March 21st.

One Commissioner, Commissioner Ishimaru, voted to place the Regulatory Agenda on the agenda in a vote that was cast on the afternoon of Monday, March 21st. The GSA deadline, with an extension that we have received, is no later than the end of this week, which is tomorrow, March 25th, which causes the scheduling of this meeting.

The previous iteration of this document that the Commission approved was the Fall 2004 Regulatory Agenda. As will be discussed by the Office of Legal Counsel, the document that we have before us for vote is identical in substance to the unanimously approved Fall Agenda with only one additional matter that's been included, and the new item is a Notice of Proposed Rulemaking to propose an increase of fees that are charged to people who ask the EEOC to provide documents under the Freedom of

Information Act.

Let me also note that the regulatory agenda, by definition, shows only regulatory level matters, formal rules that get published in the Federal Register. It gives only one slice of the various multi-faceted initiatives that the Commission carries out, policies and directives, and so on.

So to provide technical assistance with the public and policy guidance to our stakeholders, the Commission does much more than is captured in the regulatory agenda, important as those items are, and all of these efforts are directed toward fulfilling our mission of ensuring equal employment opportunity.

So at this point, I will ask Ms. Miaskoff to please proceed with your presentation. Welcome.

MS. MIASKOFF: Thank you.

Good afternoon, Madam Chair, Madam Vice Chair, Commissioners. I am the Assistant Legal Counsel for Coordination. My division of the Office of Legal Counsel coordinates preparation of the EEOC's regulatory agenda every spring and every fall.

The Spring 2005 Regulatory Agenda under consideration today lists EEOC's rules under development or review for the period Spring 2005 through Spring 2006. OMB publishes a government-wide compilation of all of the agencies' regulatory agendas in a special edition of the Federal Register which is called the Unified Agenda of Federal Regulatory and Deregulatory Actions.

Our submission is due to GSA, which is acting as Secretary for OMB here, tomorrow, March 25th, after a short, informal extension. OMB's deadline for reviewing all of the agenda submissions is next Friday, April 1st.

Galleys will be created by Friday, April 8th, and returned to the agencies to proof. Publication is anticipated by May 9th.

The regulatory agenda is required by Section 4B of Executive Order 12866, which was signed in 1993. This Executive Order is the latest in a series of Executive Orders which were signed starting in the late 1970s and into the 1980s, under which the President gave the Office of Management and Budget authority to review federal regulation on a government-wide basis in order to monitor its economic impact and substantive consistency.

The regulatory agenda also serves as a vehicle for federal agencies to publish information that is called for by other laws that also look at the impact of federal regulation. These laws include the Regulatory Flexibility Act of 1980, which was amended by the Small Business Regulatory Enforcement Fairness Act of 1996, the Unfunded Mandates Reform Act of 1995, and finally Executive Order 12132, which is called Federalism, and was signed in 1999.

Executive Order 12866 itself only directs agencies to prepare their agendas at the time and in the manner specified by OMB. OMB, in turn, requires publication of the agenda every six months, designated in the spring and fall.

Agencies are required to describe their current regulatory actions, new regulations under development, or existing regulations under review for the next 12 months. Agencies must provide dates when they expect to take the next action in an ongoing rulemaking process.

A few other salient points about the agenda. First of all, as I said before, the agenda only includes "regulatory actions." This term is defined in Executive Order 12866 as being "any substantive action by an agency normally published in the Federal Register that promulgates or is expected to lead to the

promulgation of a final rule or regulation, including notices of inquiry, advance notices of proposed rulemaking, and notices of proposed rulemaking."

The agenda does not cover items that are subject to separate OMB review pursuant to the Paperwork Reduction Act because they impose data collection or government reporting requirements. A good example of that would be the EEO-1.

The regulatory agenda is not binding on the Commission. The Commission is neither required to act on the proposals in its agenda, nor precluded from taking any other regulatory actions that are later deemed appropriate.

The regulatory agenda is a snapshot of a dynamic process. In other words, the agenda is a reporting device. It is not a mechanism for agency action on regulatory proposals.

The particulars of this agenda. The proposed Spring 2005 Agenda includes four items. The first three items were on the agenda before, including the Retiree Health Rule, posting requirements on the No Fear Rule, and the Federal Sector EEO Complaint Process.

Both the Retiree Health Rule and the No Fear Rule are technically categorized by OMB as in the final rule stage, so we are required to update the projected date for final action. Those new dates are reflected in the proposal before you now.

The item titled Federal Sector Complaint Processing is categorized by OMB as simply a long-term action which means, effectively, that no date for action is required. And, indeed, our proposal does not have a date.

The only new item in this agenda is titled Freedom of Information Act Fee Schedule. It states that the Commission is planning to revise the fees it charges to persons who make FOIA requests, and that the vehicle for that would be an NPRM to revise 29 CFR Part 1610.15.

FOIA fees have remained unchanged since 1983, although obviously our costs have increased. Fees for search and review time have increased, and obviously, we now have costs of computer searches.

This concludes my statement and I would be happy to take any questions.

CHAIR DOMINGUEZ: Thank you very much, Ms. Miaskoff.

We'll now have the opportunity for statements or questions from the Commissioners. And let me start with our Vice Chair. Madam Vice Chair?

VICE CHAIR EARP: Thank you. No opening statement, but Ms. Miaskoff, would you answer a basic question for me?

MS. MIASKOFF: Of course.

VICE CHAIR EARP: It appears that the item came to us for a vote late this year compared to in the past. Could you explain whether or not that's true, and why?

MS. MIASKOFF: That is true. We had hoped to get it to you for a vote about a week earlier than, in fact, we did.

The reasons for the delay were several. One was that OMB is implementing a new Internet-based system for doing this. And as with all new computer systems, there are lots of glitches. And we actually had to correct something where several regulations that were not ours were, indeed, listed in our

agenda. So, some of it was taken up in that.

And then, obviously, we added a new item, and one of our items, obviously, is subject to litigation which resulted, perhaps, in more careful discussions about the dates.

VICE CHAIR EARP: Okay. Thank you.

MS. MIASKOFF: Yes.

CHAIR DOMINGUEZ: Commissioner Silverman?

COMMISSIONER SILVERMAN: I'm wondering what are the repercussions, if any, if we don't meet the deadline for publishing the agenda?

MS. MIASKOFF: Right. If we don't meet the deadline for publishing the agenda, we will, obviously, still need to publish an agenda because it is required by law both under the Executive Order and it satisfies notice requirements under the other statutes I listed.

So the consequence, really, would be that we then would need to independently publish an agenda. That's happened once in the past in the ten years since this Executive Order has been in place. Apparently the SEC missed it one year. And they then published an agenda independently without the logistical -- wonderful logistic support of GSA and OMB which, nonetheless, did prove to be cumbersome and expensive for them.

COMMISSIONER SILVERMAN: Thank you.

MS. MIASKOFF: You're welcome.

CHAIR DOMINGUEZ: Commissioner Ishimaru?

COMMISSIONER ISHIMARU: Thank you, Madam Chair. I have an opening statement and then probably a few questions for Carol.

This position that I'm in now is the first time that I've been a member of the institutional minority of an organization. I've had a number of experiences in my work-a-day world, including working on Capitol Hill like Commissioner Silverman, and working in the Executive Branch, but this is really the first time that I've had the opportunity or been in the position of being part of the institutional minority, and as we've discussed here on a number of occasions, it's an important role, and I view it that way.

And I guess one thing that I certainly learned from my time on Capitol Hill, from dealing on very difficult issues with very smart politicians of all stripes, including the current Chair of the Judiciary Committee in the House, Jim Sensenbrenner, and the former Chairman of the Committee, Henry Hyde, is, I learned from my tenure there respect for the institution and its people and respect for minority rights in the institution.

And we would disagree at times, and we would disagree on virtually every issue. But one thing we did agree on and we tried to uphold was procedural fairness. We had open meetings. We gave proper notice. And if a real emergency came up, we would deal with it. And people were very accommodating if, in fact, there was a real emergency.

And I would hope that would be so here at this agency. As a government agency, I believe that we should do our business in open meetings. And the reason for this is to let the public see what we're doing. An open meeting without sufficient public notice defeats the purpose of having an open meeting.

And I would hope that we would stick to regular order unless there was a true exigent circumstance. And I'd like to spend a minute or so discussing the situation here, because the Chair laid out a timetable that is, in fact, true, but certainly wasn't laid out during the course of this consideration of this matter.

First, the regulatory agenda is a normal and regular part of our business. In no way is the existence of this requirement or its deadline a surprise to the agency. And I think Carol laid out reasons why it ran somewhat later this year, and those are legitimate reasons.

We have a computer system here that's new, especially with the Office Suite that we're all getting used to and hopefully will be able to use, which I also think is a good thing.

But the memo that was originally circulated was circulated not on the 14th of March but it was circulated on the 15th of March, which was Tuesday of last week. And there was no mention in the memo of deadlines of any sort, or that the deadline was fast approaching.

As we found out after we cast our vote, that the deadline for original submission was March 18th, merely three days after it was circulated, we were not told of the date of this informal extension, when the date actually was, until right now, today at this meeting.

And we voted -- the deadline for us voting was three days after the original deadline of March 18th, on March 21st. I submitted my vote on March 21st that we should meet to talk about this. And I thought that the meeting, if it would happen, would happen in regular order, after a sufficient notice to the public.

We got a memo the next day, on the 22nd of March from the Chair, scheduling this meeting for today, and without the seven day notice required by both our regulations and the Sunshine Act.

There was no consultation with my office on whether this date was convenient or whether I would even be here today. And as a matter of fact, I cancelled my plans for today to be here for the meeting.

And as the Chair wrote in her memo of March 22nd, there is an emergency exception to the seven day rule, and that was used to have a vote that was due yesterday. So notice - there was 24 hours' notice given for this meeting to the public.

I would ask, Madam Chair, that we -- or make a motion that we put the full text of the memo dated March 14th that was circulated on March 14th in the record and that it be included in the transcript that's posted on the Internet.

CHAIR DOMINGUEZ: Is there a second?

(No response.)

CHAIR DOMINGUEZ: Commissioner, the motion fails.

COMMISSIONER ISHIMARU: Well, then why don't I read the memo then so it gets put into the record? And I'm sorry that I have to waste our time doing this, but given that there won't be a second, I'll read the memo.

This is a memo dated March 14th, 2005. It's to members of the Commission from Peggy Mastroianni, and it's signed by Christopher Kuczynski who was acting in her stead. The subject is Proposed Spring 2005 Regulatory Agenda.

"We have prepared the Spring 2005 Regulatory Agenda, which we plan to submit to GSA as soon as

possible. The Commission will need to approve the agenda by notation vote. This memorandum provides some background information."

The next section has an underlying title, which says, "Requirement to Prepare Regulatory Agenda for OMB."

The section starts, "OMB publishes a government-wide unified regulatory" --

CHAIR DOMINGUEZ: Commissioner, I may have to interject here as a point of order. Are you making a statement? Are you making a motion?

COMMISSIONER ISHIMARU: No, my motion was not --

CHAIR DOMINGUEZ: The motion failed.

COMMISSIONER ISHIMARU: So the memo won't be put in, so I'm reading this as part of my statement.

Now if you're telling me that I can't do that - because I was doing this for the convenience of the meeting so we could move forward.

CHAIR DOMINGUEZ: I'd like to move forward. And, in fact, I appreciate your being available today even though it's a very costly process for us to engage in every time we have these meetings, as you well know.

COMMISSIONER ISHIMARU: Well, how much would it cost, Madam Chair, to hold a meeting? I think that would be useful to know. Because I do not want to cause undue budgetary burden on the Agency, but if --

CHAIR DOMINGUEZ: Well, you are. But that's neither here nor there.

COMMISSIONER ISHIMARU: Well, but if you would share with us how much this would cost, that would be very helpful for me so I would not call for unnecessary meetings because I don't want to burden the Agency by having unnecessary meetings.

CHAIR DOMINGUEZ: This is out of order, my point being that --

COMMISSIONER ISHIMARU: I would appeal --

CHAIR DOMINGUEZ: -- your motion failed.

COMMISSIONER ISHIMARU: -- I would appeal the ruling of the Chair, Madam Chair. On what basis is this out of order?

CHAIR DOMINGUEZ: Let me ask the Parliamentarian.

MS. MASTROIANNI: Commissioner Ishimaru has been reading into the record this document, and you, the Chair, have ruled that this is out of order.

If you don't mind, let me consult very briefly. The Roberts Rules does indicate that a member has no right to read from any paper or book if another member objects.

COMMISSIONER ISHIMARU: Peggy --

MS. MASTROIANNI: It would seem --

COMMISSIONER ISHIMARU: -- a paper or book? You just said -- I'm sorry --

MS. MASTROIANNI: Let me read the entire passage here. "If any member objects, a member has no right to read from or to have the Secretary read from any paper or book as a part of his speech without permission of the Assembly." And I assume that you are reading from a paper here.

So, it would seem to me that the Chair would be -- it would be appropriate if the Chair wishes to ask if there is any objection to this.

COMMISSIONER ISHIMARU: But she could also be within her rights to rule it out of order and we could just move on, no?

MS. MASTROIANNI: Oh, yes.

CHAIR DOMINGUEZ: Which I did.

COMMISSIONER ISHIMARU: Okay, okay. And that upholds the Chair's ruling. And I appreciate that. And I'll move on.

MS. MASTROIANNI: Okay.

CHAIR DOMINGUEZ: Thank you.

COMMISSIONER ISHIMARU: Thank you. I would note for the record that there was nothing in this memo that indicates any sort of deadline, neither the deadline of March 18th or the extension deadline of March -- of sometime this week which turns out to be tomorrow, the 25th.

The Chair sent out a memo on the 22nd, and since I won't read from Peggy's memo from March 22nd, it basically laid out what these new deadlines were. So for the first time, we were informed after our vote that there were deadlines, in fact, in place.

There was nothing in here that struck me under the nature of something that was extraordinary or of an emergency nature. And, you know, I understand that things come up and things need to be moved quickly and things should move forward.

But frankly, to circumvent the public notice requirements of the Sunshine Act I find very troubling. And I would hope that we don't do this --

CHAIR DOMINGUEZ: Commissioner, point of order. You're alleging that this meeting is in circumvention of the Sunshine Act?

COMMISSIONER ISHIMARU: No, what I'm saying is that the provisions of the Sunshine Act, it's my understanding, for length of notice, are there to deal with extraordinary situations where the Agency must act, and not as a convenience matter to circumvent public notice that we're having a meeting.

CHAIR DOMINGUEZ: As a point of order and as a clarification, everything that has taken place and is taking place today is in full compliance with the Sunshine Act.

COMMISSIONER ISHIMARU: My point, Madam Chair, is that the provisions to waive the seven-day requirement should be a limited use exception to the Sunshine Act, and it should be limited to situations where you have an emergency and you must act.

And here we really don't have that. We have something that was circulated to us with a deadline that was, in fact, after the deadline required by GSA. And there was no mention of that deadline until after we voted.

And I think to create an emergency is very troubling. And I think that I don't understand why this could not have been noticed with a seven-day notice, and I know people have varying schedules and I know that people are out of town.

But we could have done this meeting with a seven-day notice where people who were not here could have joined us by telephone or some other method to actually have a meeting.

I'm disappointed that we didn't follow regular order, and I truly believe that we should follow regular order as much as we can. And I would hope in the future that when we know there is a deadline, I think we should be -- members of this body should be informed there is a deadline, and if it is urgent to be informed that it's urgent when the vote is circulated in the first instance.

CHAIR DOMINGUEZ: Commissioner I know that -- and I appreciate your being here for this meeting but, you know, you had ample time to be briefed. The Commission certainly had all the resources available.

I'm just wondering, do you have any substantive comments to make regarding the regulatory agenda on which we're here to vote, or are you -- is your point about whether or not, you know, this is an emergency or not.

I would hate to be the second Agency, following SEC ten years ago, not to comply with the time lines, and I don't see a reason, as Chair of the Commission, don't see a reason why we should not be in compliance and coordinate with sister agencies on this regulatory agenda which was voted on last fall.

There are no substantive changes to it. So frankly, I am at a loss as to your observations and the relevance that they bring to moving forward on a process that our Assistant Legal Counsel has explained is pretty much a required component of our day-to-day operations.

COMMISSIONER ISHIMARU: Madam Chair, I agree with you on those points. My problem is, is that this was actually circulated after the deadline. The due date was after the deadline.

If we needed to do this before the deadline, it should have been noted in the original memo that there is a deadline here, and that it had to go by a certain date. And that didn't happen until after we had voted, after the deadline had passed.

So I would hope that in the future, if there is a deadline, that members of this body are informed of the deadline, and if there is an emergency or a need to move something quicker, that we be informed of it before the fact, and not after the fact.

And finally, my door, Madam Chair, is open. I've been known to be more than reasonable if there is an emergency or a deadline. And nobody came to me saying that there was a deadline in this case, and I would hope that next time this happens, we won't be put in a position of having to have short notice meetings to the public, and that we will fully consider the important public business that's in front of us.

Thank you, Madam Chair.

CHAIR DOMINGUEZ: Thank you, Commissioner.

All right. Is there a motion to approve the regulatory proposal as presented?

COMMISSIONER SILVERMAN: So moved.

CHAIR DOMINGUEZ: Is there a second?

VICE CHAIR EARP: Second.

CHAIR DOMINGUEZ: Is there any discussion?

(No response.)

CHAIR DOMINGUEZ: All those in favor, please say aye.

ALL COMMISSIONERS: Aye

(Chorus of ayes.)

CHAIR DOMINGUEZ: Opposed?

(No response.)

CHAIR DOMINGUEZ: All right. Thank you. The motion carries.

I want to thank everyone here with us today. We very much appreciate your being here. And there being no further business, do I hear a motion to adjourn?

VICE CHAIR EARP: So moved.

CHAIR DOMINGUEZ: Is there a second?

COMMISSIONER SILVERMAN: Second

CHAIR DOMINGUEZ: All in favor?

(Chorus of ayes.)

CHAIR DOMINGUEZ: Opposed?

(No response.)

CHAIR DOMINGUEZ: The ayes have it, and the motion carries. Thank you very much.

Meeting is adjourned.

(Whereupon, the above-entitled meeting was concluded.)

---

*This page was last modified on April 13, 2005.*

 Return to Home Page