UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, | ) ) ) | |
| Plaintiff, | ) | Case No. 1:05CV01035 (RCL) |
| v. | ) ) ) | |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.* | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case concerns the statutory right of the public to attend meetings held pursuant to the

Government in the Sunshine Act, 5 U.S.C. §552b ("Sunshine Act").  The Plaintiff, American

Federation of Government Employees, AFL-CIO, ("AFGE"), by its undersigned counsel, alleges

that the Defendants, Equal Employment Opportunity Commission ("EEOC") and its Chair, Cari

Dominguez violated the Sunshine Act and the EEOC's own regulations, 29 C.F.R. §1612.7 when

it failed to properly give seven days' advance notice of a public meeting held on March 24, 2005.

Instead, it gave only one day's notice. See Exhibits 1 and 2 to Complaint, Notices dated March

23, 2005, announcing meeting to be held in March 24, 2005.

The EEOC now moves to dismiss pursuant to Fed.R. Civ. P. 12(b)(1) on the theory that

AFGE does not have standing to challenge the agency's action, and for failure to state a claim

pursuant to Fed.R.Civ.P. 12(b)(1). Defendants' Memorandum at 1 ("Def. Mem.").  In the

{00209077.DOC}

alternative, it moves for summary judgment pursuant to Fed.R.Civ.P. 56.   Defendants assert that

the insufficient notice of the March 24, 2005 meeting was "wholly consistent with an exception

set forth in the Sunshine Act as well as in the EEOC's implementing regulations…" *Id*.  They

argue that agency business required that shorter notice be given, and that therefore one day's

notice was sufficient, regardless of the its impact on the public's right to attend the meeting.  In

essence, instead of "Government in the Sunshine" as required by law, Defendants would prefer

to substitute "Government in the Dark."

The Motion should be denied.  Instead, Plaintiffs have properly alleged an injury in fact,

and fall squarely within the "zone of interests" intended for protection here.  Furthermore, the

shortened notice did not properly meet any of the exceptions carved out by the Sunshine Act and

the EEOC's implementing regulations.  Finally, Defendants have failed to comply with D.C.

Local Rule LCvR 56.1, by failing to submit a Statement of Undisputed Material Facts in support

of their Alternative Motion for Summary Judgment.

## FACTS

The Sunshine Act was enacted in 1976 to ensure that "{t}he public is entitled to the

fullest practicable information regarding the decision making process of the Federal

Government."  Government in the Sunshine Act, 5 USC § 552b note; Pub. L. 94-409, Section 2

(1976) (declaration of policy).  *See also* H.R. Conf. Rep. 94-1441, 1976 U.S. C. C. A. N. 2244,

2245 (1976).  To effectuate this purpose, the Act requires that all every meeting of a covered

agency be open to the public, and that the "agency shall make public announcement, at least one

week before the meeting of the time, place and subject matter of the meeting…"  5 U.S.C.

§552b(b), (c), (e)(1).  Finally, the Act allows for shortened notice in certain limited situations,

when "agency business requires" immediate action, but requires that in such cases notice be

given "at the earliest practicable time." 5 U.S.C. § 552b(e)(1). The agency has also

promulgated its own regulations, containing similar requirements, and specifying that the notice

be announced on a recorded telephone message and posted in the EEOC headquarters building

lobby "not later than one week prior to the commencement of the meeting." *See* 29 C.F.R.

§1612.7.

Here, the Defendants scheduled a public meeting to be held on March 24, 2005, but

failed to provide notice to the public, including plaintiffs, until the day before the meeting.

Complaint at ¶¶ 2-4.[1]  It did not issue the public announcement of the meeting until March 23,

2005, as shown on the notice itself. *Id.* It did not post the announcement in the lobby of the

EEOC headquarters at least one week prior to the date of the meeting. Complaint at ¶ 4. It did

not announce the meeting on the EEOC's designated telephone line for public announcements,

(202) 663-7100, at least one week prior to the date of the meeting. Complaint at ¶ 5. It did not

submit the notice to the Federal Register until March 23, 2005, the day before the meeting.

Complaint at ¶ 6; *See also* Federal Register Notice attached as Exhibit 1 to Complaint. The

notice was not published in the Federal Register until March 28, 2005, four days after the

meeting. Complaint at ¶ 14; Comp. Exh. 1.

Because of the untimely notice, many interested AFGE members, EEOC employees, and

members of the public were unable to attend the meeting. Complaint at ¶ 14. As set forth in the

accompanying Affidavits of Union President Gabrielle Martin and National Vice President

Andrea Brooks, and in the accompanying Statement of Disputed Material Facts, AFGE and its

---

[1] All facts alleged in the Complaint must be accepted as true by the court when considering a Motion to Dismiss. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Moreover, the Court "must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Holy Land Found. for Relief and Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C. Cir. 2003) (citing authority).

members were injured by the agency's failure to provide adequate advance notice of the March

24 meeting, in violation of both the letter and spirit of the law.

## **STANDARD OF REVIEW**

*A.  Motion to dismiss standard*

When construing a motion to dismiss, the Court must accept all allegations of the

complaint as true, and should grant the motion "only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations." *Hishon v. King &*

*Spalding*, 467 U.S. 69, 73 (1984) (discussing standard under Rule 12(b)(6); *Caesar v. United*

*States,* 258 F. Supp. 2d 1, 2 (D.D.C. 2003) (discussing standard under Rule 12(b)(1).  To survive

such a motion, the complaint need merely set forth sufficient information to suggest there exists

some recognized legal theory upon which relief can be premised. *Wells v. United States,* 851

F.2d 1471, 1473 (D.C. Cir. 1988) (citing authority). Moreover, the Court "must grant plaintiff

the benefit of all inferences that can be derived from the facts alleged." *Holy Land Found. for*

*Relief and Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C. Cir. 2003) (citing authority), and must

construe all allegations most favorably to the Plaintiffs.  *Hohri v. United States,* 782 F.2d 227,

241 (D.C.Cir.19860; S*chuler v. United States*, 617 F.2d 605,608 (D.C. Cir. 1979).  The motion

should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46

(1957).

*B.      Summary judgment standard*

Summary judgment is appropriate only in those cases in which there is no genuine

dispute as to a material fact, and the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c); _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." _Celotex Corp.,_ 477 U.S. at 323.

In order to defeat a motion for summary judgment, a plaintiff need not produce evidence that would require a verdict in her favor. Rather, she need only demonstrate that there is sufficient evidence "to require a jury or a judge to resolve the parties' differing versions of the truth at trial." _Anderson v. Liberty Lobby, Inc.,_ 477 U.S. 242, 248-49 (1986) (_quoting First National Bank of Arizona v. Cities Services Co.,_ 391 U.S. 253, 288-89 (1968)). In contrast, a court may grant summary judgment only ". . . where it is quite clear what the truth is . . . ." _Poller v. Columbia Broadcasting System_, 368 U.S. 464, 467 (1962). "The record must show the movant's right to [summary judgment] with such clarity as to **leave no room for controversy**," and must demonstrate that the opposing party "would not be entitled to [prevail] **under any discernible circumstances**." _McKinney v. Dole_, 765 F. 2d 1134, 1135 (D.C. Cir. 1985) _(emphasis added)._

In addition, in this Court, parties who seek summary judgment are required to undertake one additional step. D.C. LCvR 56.1 requires that "Each motion for summary judgment shall be accompanied by a statement of material facts as to which moving party contends there is no genuine issue, which shall include references to the parts for the records relied on to support the statement." Here, Defendants have failed to submit any statement of undisputed material facts. However, its Memorandum contains a number of assertions regarding the alleged "lack of concrete or particularized injury" suffered by AFGE and its officers and members as a result

of the violation in this case.  See, e.g. Def. Mem. at 6-9.  It also asserts that the EEOC followed

its own procedures, that it took a recorded notation vote, that the short notice was required by

"agency business," and that the announcement was made "at the earliest practicable time." It

attaches several agency memoranda to its Memorandum, but it cites no evidence, much less any

sworn evidence, to support its bald assertion that the announcement was made "at the earliest

practicable time."  Since none of these facts were listed and identified separately as required, it is

difficult for Plaintiff to discern upon which assertions Defendant seeks to rely.

However, as required by the Local Rule, Plaintiffs assert that there are several genuine

issues of material fact in dispute, including whether or not the Agency made the public

announcement "at the earliest practicable time" pursuant to 5 U.S.C. §552(e)(1) and whether or

not EEOC business required that the public meeting be held at a date earlier than one week.

Those Facts are set forth in a separate pleading which accompanies this Memorandum.  *See*

Plaintiff's Statement of Material Disputed Facts ("Facts"), attached hereto.


## **ARGUMENT**

## I.    **PLAINTIFFS HAVE STANDING TO COMPEL THE DEFENDANTS' COMPLIANCE WITH THE SUNSHINE ACT**

Contrary to Defendant's assertion, Plaintiffs did suffer, and have alleged, an "injury in

fact", aka an invasion of a legally protected concrete and particularized interest, as a result of the

Defendant's violation, have identified a case-or-controversy, and therefore have established

Article III standing, as set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and

other cases.

The constitutional standing requirement has three elements: (1) "there must be

alleged . . . an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical;" (2) "there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant;" and (3) "there must be redressability—a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998*) (internal quotation marks and citation omitted). See also Lujan*, 504 U.S. at 560-61, *Nat'l Treasury Employees' Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) ("*NTEU*"). These three elements apply to individuals as well as organizations suing on behalf of themselves or on behalf of their members. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). *See also NTEU*, 101 F.3d at 1427.

When confronted with a defendant's motion to dismiss, courts may "'presum[e] that [the plaintiff's] general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). Where, as here, Plaintiffs claim to be injured as a result of a violation of a procedural right "the courts relax —- while not wholly eliminating—-- the issues of imminence and redressability. . . ." *Ctr. for Law and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) (citing *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 664-65 (D.C. Cir. 1996) (*en banc*); *citing Lujan,* 504 U.S. at 573 n.7.

Defendants assert that Plaintiffs suffered no injury in fact, and have not suffered "harm . . . that is concrete and actual or imminent." Def. Mem. at 8. Because the violation here was procedural, plaintiffs must show both that (1) "the government violated their procedural rights designed to protect their threatened concrete interest," and (2) the violation resulted in injury to

their concrete, particularized interest." *Ctr. for Law and Educ.*, 396 F.3d at 1157.  Here,

Plaintiffs have alleged facts which meet both tests.

1.  **The procedural rights at issue here were designed to protect AFGE's threatened concrete interest, that of representing its members interests by attending and observing EEOC's decisionmaking process in a public meeting.**

The procedures required by the Open Meetings law were designed to protect the public's

right to observe and attend agency meetings, of exactly the kind at issue here.   Indeed, the law at

issue expressly provides that actions to enforce the Open Meetings law "may be brought by **any**

**person** against an agency. . . "   5 U.S.C. § 52b (h)(1).  The reason for this broad grant of

statutory standing is set forth in the House Report on the law: "[t]he basic premise of the

Sunshine legislation is that, in the words of Federalist No. 49, 'the people are the only legitimate

fountain of power, and it is from them that the constitutional charter . . . is derived .''

Government is and should be the servant of the people, and it should be fully accountable to

them for the actions which it supposedly takes on their behalf."  H. Rep. 94-880(I), 1976

U.S.C.C.A.N. 2183-84.  *See also Symons v. Chrysler Corporation Loan Guarantee Board*, 670

F.2d 238, 239 (1981) (quoting *Pub. L. No. 94-409, s 2, 90 Stat. 1241 (1976)*)("We do not quarrel

with the district court's characterization of the Sunshine Act as a broadly remedial statute

dedicated to the principles of open government deliberations and the public's "right to know.")

As asserted in the Complaint, AFGE represents over 600,000 bargaining unit employees,

including employees of the EEOC itself, and other federal employees who rely upon the EEOC

to enforce their rights to be free from discrimination.  Complaint at ¶ 8.  Each of those 600,000

workers, as well as AFGE as their representative, are entitled to proper advance notice of public

meetings held by the EEOC.  In particular, those AFGE members who are employed by the

EEOC itself are interested parties whose daily lives, work assignments, and other working conditions are routinely affected by decisions taken at EEOC public meetings.

The broad statutory grant of standing to "any person" to enforce the Open Meeting law includes organizations such as AFGE, as well as its individual members   Organizations are entitled to sue on their own behalf for injuries they have sustained.  *See Warth v. Seidin,* 422 U.S. 490, 511 (1975).  In addition, it has long been held that organizations like AFGE have associational standing to assert, protect and defend the rights of their members, as set forth in the attached Affidavits of such as Union President Martin and National Vice President Brooks.  *See,* Affidavit of Gabrielle Martin ("Martin Aff."), attached hereto as Exhibit 1; Affidavit of Andrea E. Brooks ("Brooks Aff."), attached hereto as Exhibit 2; s*ee also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (defendant's unlawful housing practice "frustrated" nonprofit's efforts "to assist equal access to housing"); *Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 (1991) ("*MWAA*") (statute "mad[e] it more difficult" for organization to reduce airport noise);Circuit  *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 28-29, 31 (D.C. Cir. 1990).  AFGE and its affiliate, the National Council of EEOC Locals No. 216, are the certified exclusive representative of all EEOC bargaining unit employees nationwide.  As such, AFGE has both the right and the duty to attend agency meetings on behalf of its members, and is entitled to proper notice of such meetings in order to do so.

Defendants' reliance on *Center for Law and Education* to defeat the express statutory grant of standing here must fail.  In that case, advocacy groups challenged the makeup of an advisory committee appointed by the Secretary of Education under the No Child Left Behind Act, seeking to enforce a provision for 'an equitable balance between representatives of parents and students and representatives of educators and educational officials' on the committee.

*Ctr. for Law and Educ.*, 396 F.3d at 1154-55 (quoting 20 U.S.C. § 6571(b)(3)(B)). The court concluded that a particular advocacy group did not have standing to challenge the makeup of the committee because there was no indication that the provision was designed by Congress to protect their interests. 396 F.3d at 1157.

In this case, the express purpose of the Sunshine Act was to create the opportunity for **any** interested member of the public, including but not limited to AFGE members and officers, to attend agency meetings and to have sufficient advance notice of those public meetings. *Symons*, 670 F.2d at 239. This is the polar opposite of the No Child Left Behind statute at issue in *Ctr. for Law and Educ.*, which the court declared was not designed for "purposeful protection of the concrete interests of students and parents," and did not create any enforceable procedural rights. 396 F.3d at 1156, 1158.

## 2. The violation resulted in actual injury to AFGE's concrete, particularized interest to attend the public meeting at issue.

The Supreme Court has concluded that organizations like AFGE may suffer "concrete and demonstrable injury to their activities," when government actions make it more difficult for the organizations to carry out the activities through which they accomplish their stated missions. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (defendant's unlawful housing practice "frustrated" nonprofit's efforts "to assist equal access to housing"); *Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 (1991) ("*MWAA*") (statute "mad[e] it more difficult" for organization to reduce airport noise). The Court of Appeals for the District of Columbia agrees. *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 28-29, 31 (D.C. Cir. 1990) (defendants' illegal actions caused plaintiff to spend scarce resources to "counteract" defendants' conduct); *BMC*, 28 F.3d at 1276 (defendant's

discrimination made plaintiff organization's "overall task more difficult"). *See also Natural Resources Defense Council v. Abraham*, 223 F. Supp. 2d 162, 179-80 (D.D.C. 2002) (Sullivan, J.), *set aside and remanded on other grounds*, 353 F.3d 40 (D.C. Cir. 2004) (assertion that NRDC's members would have attended meetings and reviewed materials had defendants complied with Federal Advisory Committee Act in establishment and use of committees sufficient to establish injury in fact).

Here, as alleged, Plaintiff is an unincorporated association that exists for the purpose of improving the working conditions of federal sector employees. AFGE and its affiliated locals and councils represents 600,000 workers in the federal government and the District of Columbia and is the largest federal employee union. In bringing this case, AFGE seeks to represent the interests of these 600,000 workers and their right to have proper notice of public meetings held by the EEOC. Complaint ¶ 6. In addition, AFGE also represents employees of the EEOC and their interests as parties who are affected by actions taken at EEOC public meetings. Complaint ¶ 8. The Defendants' failure to ensure that the required one week notice was given directly injured Plaintiffs' interest in improving the working conditions of federal sector employees.

As set forth in detail in the accompanying Statement of Disputed Material Facts, AFGE suffered an actual, concrete and particularized injury as a result of the shortened notice.

In addition to being unable to attend the meeting in question, as alleged in the complaint, Plaintiffs discovered too late that the Regulatory Agenda which was discussed and voted upon at the meeting included issues which impacted the interests of the Plaintiff, its members, and those it represents. Facts at 7, citing Martin Aff. at ¶ 6, Brooks Aff. at ¶¶ 10-11.

Martin relies on the public notices published in the Federal Register, the Agency's internal and external websites and telephone notices to stay informed about upcoming

meetings, in order to make plans to attend meetings, to notify and inform AFGE members, to provide opportunities for AFGE members to attend, and/or to send a union designee. Facts at 8, citing Martin Aff. ¶¶ 9-10. In the past, Martin has submitted comments to the Commission regarding issues to be addressed at public meetings. Facts at ¶ 9, citing Martin Aff. ¶ 16. Adequate advance notice is essential to developing the union's position on an issue, and to prepare and submit comments to the Commission. Facts at ¶ 10, citing Martin Aff. ¶ 13.

Because only one day's public notice was given of the March 24, 2005 public meeting, Union President Martin was unable to attend the meeting or to send a designee to observe the deliberations, as is her normal practice. Facts at ¶ 11, citing Martin Aff. ¶ 8. Martin was also unable to notify and inform other interested union members and interested stakeholders about the meeting, as is her normal practice, and was unable to gather comments from union members regarding the issues to be decided, as she has done in the past. Facts at ¶¶ 12-13, citing Martin Aff. ¶ 7. Because of the shortened notice, Martin was also unable to present verbal or written comments to the Commissioners setting forth the union's position on the issues to be decided, and was also unable to develop and issue any press releases calling the attention of her members and interested stakeholders to the issues to be decided. Facts at ¶¶ 14-15, citing Martin Aff. ¶ 7.

If adequate notice had been provided, Union officers Martin and Brooks would have been able to decide whether to attend the meeting, to discuss the issues at stake with other interested union officers and members, to gather comments from union members, to present comments to the Commissioners, or to develop and issue press releases calling attention and urging action on the issues to be decided. Facts at ¶ 16, citing Martin Aff. ¶ 8. In fact, Martin did so at the very next scheduled public meeting, on May 16, 2005. Martin Aff. ¶¶ 12-14. Because adequate advance notice was provided, Martin was able to both attend the May meeting and to

convince the Commission to delay its decision on a major restructuring proposal in order to permit more time for public comment. Martin Aff. at ¶ 12-18. After the May 16, 2004 meeting was announced, stakeholders and Congress requested more time to allow for the opportunity to comment on a major reorganization of the Agency. Exhibit 1 ¶¶ 10-13. The agency agreed with their recommendations, granted more time for public comment, and substantially revised its proposals. Id. Similarly, if adequate advance notice had been provided in this case, Martin might have been able to lobby and influence the Commissioners regarding its March 24 Regulatory Agenda and FOIA fee decisions as well.

Similarly, the short notice prevented AFGE National Vice-President Andrea E. Brooks from assigning a staff member to attend the public meeting in order to represent the interests of her constituents. Brooks Aff.¶¶ 3 and 7-10. NVP Brooks was also unable to submit comments on behalf of union members for the EEOC's consideration as she has done in the past. Brooks Aff. ¶¶ 12-14. In short, AFGE's "concrete and particularized interest" in advance notice of the March meeting in order to protect and advance the interests of its members was injured by the agency's actions, in that it was prevented from attending and presenting its views of the agency's proposed actions.

Furthermore, the causation in this case is clear – if the defendant had granted the required notice, AFGE would have been able to attend the meeting and to participate in the process as it saw fit. *See, e.g. Coalition for Legal Services v. Legal Services Corp.*, 597 F. Supp. 198, 201 (D.D.C. 1984). The same is true for "redressability," as required by *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)*,* although both these requirements are "relaxed" in procedural cases such as this one. *Ctr. for Law and Educ.*, 396 F.3d at 1157. It is very likely that the requested relief, an injunction as authorized by the statute, will redress the alleged

injury and limit future damage to AFGE's interest, since it will ensure that the agency comply with the law in future.

By contrast, if the agency is permitted to continue defying the Sunshine Act by holding meetings on one day's notice, AFGE's ability to represent its members will be irrevocably diminished, in violation of both the letter and spirit of the law. Congress did not intend for agencies like the EEOC to operate "in the Dark," nor to be immune from lawsuits like this one: instead, they must conduct agency business in the Sunshine, and are subject to suit when they fail to do so. The law requires no less.

Finally, the cases cited by the EEOC are inapposite, as they do not even mention the Sunshine Act or the injuries actually suffered by AFGE, which are sufficiently alleged in the complaint. At this stage of the case, the complaint clearly sets forth sufficient information to suggest there exists some recognized legal theory upon which relief can be premised. *Wells v. United States,* 851 F.2d 1471, 1473 (D.C. Cir. 1988), and the Court "must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Holy Land Found. for Relief and Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C. Cir. 2003). Plaintiffs have clearly established sufficient information to demonstrate "some recognized legal theory" and their standing to bring the complaint.

Even if considered at the summary judgment stage, the court must still construe all allegations most favorably to the nonmoving party, here the Plaintiffs. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Given the facts alleged above, this case is not one, such as *Lujan,* in which there is no evidence that the "'party seeking review [is] himself among the injured.'" 504 U.S. at 563 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 734-35 (1972)). In the instant case, the Plaintiff's "concrete and particularized interest" in monitoring the EEOC's

decisionmaking process, and its ability to safeguard and improve the working conditions of its

unit employees and members, has been damaged by the EEOC's violation of AFGE's right to

timely public notice of its activities, in that AFGE has been deprived of its statutory right to

"information regarding the decision-making processes of the Federal Government."   *Symons v.*

*Chrysler Corporation Loan Guarantee Board*, 670 F.2d 238, 239 (1981) (quoting *Pub. L. No.*

*94-409, s 2, 90 Stat. 1241 (1976)).*   AFGE has established its standing to bring this case.

## II.    AGENCY BUSINESS DID NOT NECESSITATE A MEETING SCHEDULED WITHOUT THE REQUIRED SEVEN DAY NOTICE, AND THE AGENCY DID NOT PROVIDE NOTICE "AT THE EARLIEST PRACTICABLE TIME."

The Defendants also argue that Agency business necessitated shorter than seven days

notice for the March 24, 2005 meeting.  Def. Mem. at 9-10.  However, the Transcript of the

March 24, 2005 Meeting contains evidence that there was in fact no emergency and that the

business at hand, the approval of the semiannual regulatory agenda, was regular Commission

business.  As Commissioner Ishimaru stated, "the regulatory agenda is a normal part of our

business.  In no way is the existence of this requirement or its deadline a surprise to the Agency."

Transcript of Meeting of March 24 to Vote on Spring Regulatory Agenda, attached to Complaint

and hereto as Exhibit 3, at 6.  At the same meeting, Commissioner Silverman asked about the

repercussions of missing the deadline set up by OMB.  In response to her question, the Assistant

Legal Counsel for Coordination, Ms. Miaskoff stated that the Agenda would simply have to be

published independent of the OMB.  Ms. Miaskoff pointed out that this has happened before

specifically with the SEC, which she asserts was cumbersome and expensive for them.

Transcript at 5.

There is no evidence in this record of whether any additional cost would have resulted to

the EEOC in this case from a six-day delay, nor is there any evidence that the EEOC was

unable to publish its Agenda independently six days later.  Indeed, balancing these speculative

additional costs against the interests of the Plaintiff in proper advance notice of the March 24,

2005 meeting, allowing them to attend as intended by the Sunshine Act, the law clearly favors

Plaintiffs' interests over any additional costs that may have been incurred.  See Statement of

Material Facts at ¶6.  This is a disputed material fact which cannot be decided either on a motion

to dismiss or on summary judgment.

In *Coalition for Legal Services v. Legal Services Corp.*, 597 F. Supp. 198, 201 (D.D.C.

1984), one of the only reported cases construing this law, the court held that the mere assertion

that the business of the agency requires a meeting without seven days notice, is in and of itself

not in line with the legislative intent of the Sunshine Act, and upheld the injunction against the

agency.

> [t]he very language of the statute and regulation indicates that the clause
> was intended to ensure the flexibility to make those business decisions
> which must be made within time periods so short that seven days advance
> notice to the public is impossible.  Moreover, "legislative history indicates
> that this 'escape clause' allowing for shorter notice is not to be relied upon
> routinely but should be primarily used to deal with emergency, late-
> breaking items."  Berg & Klitzman, An Interpretive Guide to the
> Government in the Sunshine Act 48 (1978).  In fact, if an agency may
> reschedule a meeting for reasons not based upon an emergency situation
> or requiring swift agency decision, then the Sunshine Act loses much of its
> force.

597 F. Supp. at 201.  In our case, as in *Coalition for Legal Services,* the record evidence

suggests that EEOC did just that:  although they had sufficient time to allow for seven days

notice to the public, they created an artificial "emergency" in order to avoid public scrutiny

of a routine agency decision.  Therefore, their alleged exception is invalid and should not be

accepted by this court.

Finally, even accepting the Defendant's argument that Agency business necessitated less than seven days notice (which we dispute), the Agency has proffered no evidence to support their assertion that they gave notice at "the earliest practicable time," as required by 5 U.S. C. § 552b (e) (1) and 29 C.F.R. §1612.7.  According to the March 24, 2005 transcript, the Defendants were aware of both OMB's March 18, 2005 deadline and the fact that they would be unable to meet the deadline as early as March 14, 2005.  Exhibit 3 at 6.  There was no mention of deadlines in the March 14, 2005 memo that was circulated to the EEOC Commissioners on March 15 regarding this matter.  Facts at ¶ 3, citing Transcript at 6, 8.  Because the Commission has refused to make the March 15, 2005 memo public, Transcript at 6-8, it is impossible for plaintiff to verify its bare excuses.

Additionally, the record evidence shows that the deadline for OMB to review the regulatory agenda was not until April 1, 2005.  Facts at ¶¶ 4-5; Transcript at 3.   Thus, the evidence suggests that the EEOC did not post notice of the March 24, 2005 meeting at the earliest practicable time as required by law.  Facts at ¶ 2, citing Transcript at 6-8.   Because the OMB's deadline for reviewing the submissions was Friday, April 1, 2005, the EEOC could have posted a seven day notice of the public meeting on March 24 and still met OMB's deadline.  Facts at ¶ 5, citing Transcript at 3.

The Commission's actions in this case avoided the plain intent of the law, which is to ensure that "government works best when it operates in the Sunshine."  H.R. Rep. 94-880(I), 1976 U.S.C.C.A.N. 2183, 2184.  Although the EEOC could not legally close the meeting under section c, it gave only 24 hours notice, constructively excluding the public and AFGE members from attending.  The late notice even forced a Commissioner to change plans last minute to attend a meeting for a vote.  Exhibit 2, p. 6.  There was no legitimate purpose for the

inadequate notice except to avoid public observation.  There was no emergency, other than the regular business of the Commission.

Nevertheless, the Commissions' actions here effectively deprived AFGE of its opportunity to attend, to represent its members, and to advocate its positions before the Commission.  Without sufficient advance notice, AFGE and its members are precluded from being involved in the process, from submitting comments or having any prior input into the Commission's decision, or even to observe its deliberations.  If this pattern continues, and the EEOC is allowed to continue this practice, its "open" meetings will in effect be closed to the public, thereby defeating the entire purpose of the Sunshine Act.  5 U.S.C. §552.

III.    **THE DEFENDANT'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT SHOULD BE STRICKEN FOR FAILURE TO COMPLY WITH LOCAL RULES.**

In the alternative, Defendants have moved for Summary Judgment on the issue of whether  the agency violated the Sunshine Act.  However, they completely failed to adhere to LCvR 56.1.  This rule states that:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which moving party contends there is no genuine issue, which shall include references to the parts for the records relied on to support the statement.

The Agency failed to submit any statement of material facts that are not in dispute.  Accordingly, the Defendant's Motion for Summary Judgment should not be considered, and should be stricken for failure to comply with LCvR 56.1.   In the alternative, Plaintiff submits that discovery is necessary in order to resolve disputed facts regarding whether the agency's action complied with the statute at issue.    As required by the Local Rule, Plaintiff has appended to this

Opposition a list of Disputed Material Facts, which require resolution by the fact-finder after adequate time for discovery in this case.  For this reason, Defendant's Motion for Summary Judgment should be either stricken or rejected forthwith.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative, for summary judgment should be denied.  Plaintiff has suffered an injury in fact, and therefore has standing to bring this complaint.  Moreover, Defendants have failed to establish that its one-day notice of public meeting was necessitated by Agency business or consistent with the intent of the statute or the public interest.  Finally, the Defendants have failed to notify the public at the earliest practicable time, and failed to comply with the Local Rules.

Wherefore, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied, that its Motion for Summary Judgment be stricken, and that Plaintiffs be permitted to proceed with discovery.

Respectfully submitted,

Dated:  August 30, 2005                    By:     /s/

_____

Mark D. Roth (D.C. Bar No. 235473)
General Counsel
Charles Hobbie (D.C. Bar No. 283499)
Deputy General Counsel
Sarah J. Starrett (D.C. Bar No. 443314)
Supervisory Attorney
American Federation of Government Employees,
AFL-CIO
80 F Street, NW
Washington, DC 20001
Telephone: (202) 639-6420

Facsimile: (202) 639-4112

{00209077.DOC}

Email: rothm@afge.org
hobbic@afge.org
sstarrett@afge.org

*Attorneys for Plaintiff*

AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES

August 30, 2005

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**, with exhibits and attachments, was served via electronic delivery on this, the **30th** day of August, 2005, to the following persons:

PETER D. KEISLER, Assistant Attorney General
KENNETH L. WAINSTEIN, United States Attorney
ARTHUR R. GOLDBERG
CARLOTTA P. WELLS
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
(202) 514-4522 (telephone)
(202) 616-8470 (facsimile)
Carlotta.wells@usdoj.gov

_____
Sarah J. Starrett